UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

CORY STEVEN FLUHR,

Plaintiff,

v. Case No. 26-cv-525-pp

DODGE CORRECTIONAL INSTITUTION
and INTERN EMMA FRITSCH,

Defendants.

---

**ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING FILING FEE (DKT. NO. 2), DENYING WITHOUT PREJUDICE PLAINTIFF'S MOTION TO APPOINT COUNSEL (DKT. NO. 7) AND SCREENING COMPLAINT UNDER 28 U.S.C. §1915A**

---

Plaintiff Cory Steven Fluhr, who was incarcerated at the Wisconsin Resource Center and is representing himself, filed a complaint under 42 U.S.C. §1983, alleging violations of his constitutional rights. This decision resolves the plaintiff's motion for leave to proceed without prepaying the filing fee, dkt. no. 2, addresses the plaintiff's motion to appoint counsel, dkt. no. 7, and screens his complaint, dkt. no. 1.

## I. Motion for Leave to Proceed without Prepaying the Filing Fee (Dkt. No. 2)

The Prison Litigation Reform Act (PLRA) applies to this case because the plaintiff was incarcerated when he filed his complaint. See 28 U.S.C. §1915(h). The PLRA lets the court allow an incarcerated plaintiff to proceed with his case without prepaying the civil case filing fee. 28 U.S.C. §1915(a)(2). When funds exist, the plaintiff must pay an initial partial filing fee. 28 U.S.C. §1915(b)(1). He then must pay the balance of the $350 filing fee over time, through deductions from his prisoner account. Id.

On April 2, 2026, the court ordered the plaintiff to pay an initial partial filing fee of $21.82. Dkt. No. 5. The court received that fee on April 14, 2026. The court will grant the plaintiff's motion for leave to proceed without prepaying the filing fee and he must pay the remaining balance over time as he is able.

## II. Screening the Complaint

### A. Federal Screening Standard

Under the PLRA, the court must screen complaints brought by incarcerated persons seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the incarcerated plaintiff raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter C'nty Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. C'nty of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes liberally complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

B. The Plaintiff's Allegations

The plaintiff was confined at Dodge Correctional Institution during the events described in the complaint. Dkt. No. 1 at 2. He states that defendant Emma Fritsch, an intern at Dodge, violated his Eighth Amendment rights. Id.

The plaintiff alleges that when he arrived at Dodge, he let "them" know that just months earlier he had been in the ICU for a suicide attempt and that he needed to see "PSU"—presumably the psychological services unit. Id. He says that shortly after he arrived, he started to see an intern in the "psych unit." Id. The plaintiff alleges that during the two months he met with her, he told her that he needed his meds, that he was suicidal and "would act on it when [he] hit his breaking point and flat out said [he] would kill himself and did not care if [he] lived." Id. The plaintiff states that Fritsch would ask when he was going to do it, how, and if he would let the guards know he was going to do it. Id. at 2-3. The plaintiff allegedly told her repeatedly that he would not tell anyone, there were plenty of ways to do it and that he would "just act on it if

[he] didn't get some help." Id. at 3. He states that they had the same conversation every meeting and that their meetings always ended with her telling him to stay safe. Id.

The plaintiff alleges that on August 17, 2025, he couldn't take it anymore. Id. He says that he left his cell at medication pass, entered a janitor's closet and slit his throat trying to end his life. Id. The plaintiff allegedly missed his "main vein" and was transported to the hospital where he received fifteen stitches. Id. The plaintiff states that Dodge omitted information in their PSU records that made them look bad. Id.

For relief, the plaintiff seeks monetary damages and for something to be done about how these situations are handled in the future. Id. at 4. He says that he can't put into words how helpless he felt when he was expressing to them what was going on. Id.

C. Analysis

Failure to provide protection from suicide or self-harm constitutes an Eighth Amendment violation if deliberate indifference by prison officials to an incarcerated individual's welfare effectively condones the harm by allowing it to happen. Eagen v. Dempsey, 987 F.3d 667, 693-94 (7th Cir. 2021) (citations omitted). To state a claim under the Eighth Amendment, the plaintiff must allege: (1) "he presented an objectively serious medical need;" and (2) "a defendant [ ] responded [ ] with deliberate indifference, thereby resulting in some injury." Lord v. Beahm, 952 F.3d 902, 904 (7th Cir. 2020) (citing Petties v. Carter, 836 F.3d 722, 727-28 (7th Cir. 2016)). A medical condition is objectively serious if it is "so obvious that even a lay person would perceive the need for a doctor's attention." See Roe v. Elyea, 631 F.3d 843, 857 (7th Cir. 2011). "All agree that suicide is an objectively serious medical condition . . .

[and] prison officials cannot intentionally disregard a known risk that an inmate is suicidal." Lord, 952 F.3d at 904 (citing Lisle v. Welborn, 933 F.3d 705, 716 (7th Cir. 2019)). Regarding the second prong, a defendant responds with deliberate indifference when he or she "actually knew of and disregarded a substantial risk of harm." Petties, 836 F.3d at 728. "This requires 'more than mere or gross negligence, but less than purposeful infliction of harm.'" Lisle, 933 F.3d at 716-17 (quoting Matos v. O'Sullivan, 335 F.3d 553, 557 (7th Cir. 2003)).

Construed liberally, the plaintiff alleges that he repeatedly told Fritsch that he was suicidal and that he would try to kill himself. Fritsch allegedly asked the plaintiff when and how he would do it and whether he would tell the guards; he responded that he would do it when he reached his breaking point, that there were a lot of ways to do it and that he would act on it if he didn't get any help. Presumably, the visits with Fritsch were intended to help the plaintiff with his mental health issues including his suicidality. It appears that he needed more help, and that he did not get it. At this early stage, the plaintiff may proceed on an Eighth Amendment claim against Fritsch in her individual capacity.

The plaintiff may not proceed against Dodge Correctional Institution. A state prison is not a "person" that may be sued under §1983. Myers v. Ind. Dep't of Corr., 655 F. App'x 500, 503 (7th Cir. 2016) (citing Will v. Mich. Dep't of State Police, 491 U.S. 58, 64 (1989)). The court will dismiss Dodge.

## III. Motion to Appoint Counsel (Dkt. No. 7)

The plaintiff filed a motion to appoint counsel. Dkt. No. 7. He states that he wrote to over fifteen lawyers to take his case, and he includes letters from some of the lawyers who declined to represent him. Id. at 2. The plaintiff says

that he has mental health issues and that it has been a struggle to get this far in the process. Id. He states that he has no idea what he is doing and would appreciate the court appointing him a lawyer Id.

In a civil case, the court has discretion to recruit a lawyer for individuals who cannot afford to hire one. Navejar v. Iyola, 718 F.3d 692, 696 (7th Cir. 2013); 28 U.S.C. §1915(e)(1); Ray v. Wexford Health Sources, Inc., 706 F.3d 864, 866-67 (7th Cir. 2013). "[D]eciding whether to recruit counsel 'is a difficult decision: Almost everyone would benefit from having a lawyer, but there are too many indigent litigants and too few lawyers willing and able to volunteer for these cases.'" Henderson v. Ghosh, 755 F.3d 559, 564 (7th Cir. 2014) (quoting Olson v. Morgan, 750 F.3d 708, 711 (7th Cir. 2014)).

In exercising its discretion, the court must consider two things: "(1) 'has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so,' and (2) 'given the difficulty of the case, does the plaintiff appear competent to litigate it himself?'" Eagan v. Dempsey, 987 F.3d 667, 682 (7th Cir. 2021) (quoting Pruitt v. Mote, 503 F.3d 647, 654-55 (7th Cir. 2007)). And, given the scarcity of *pro bono* counsel resources, the court may also consider the merits of a plaintiff's claim and what is at stake. Watts v. Kidman, 42 F.4th 755, 763-64 (7th Cir. 2022).

To satisfy the first prong, the court must determine that a plaintiff made a good faith effort to hire counsel. Pickett v. Chi. Transit Auth., 930 F.3d 869, 871 (7th Cir. 2019). "This is a mandatory, threshold inquiry that must be determined before moving to the second inquiry." Eagan, 987 F.3d at 682. To demonstrate he satisfied the first prong, the plaintiff must show he contacted at least three lawyers and provide the court with (1) the lawyers' names; (2)

their addresses; (3) how and when the plaintiff attempted to contact the lawyer; and (4) the lawyers' responses.

"The second inquiry requires consideration of both the factual and legal complexity of the plaintiff's claims and the competence of the plaintiff to litigate those claims." Eagan, 987 F.3d at 682. When considering the second prong, the court "must examine the difficulty of litigating specific claims and the plaintiff's individual competence to litigate those claims without counsel." Pennewell v. Parish, 923 F.3d 486, 490 (7th Cir. 2019). The court looks at "whether the difficulty of the case, factually, legally, and practically, exceeds the litigant's capacity as a layperson to coherently litigate the case." Id. This includes "all tasks that normally attend litigation," such as "evidence gathering, preparing and responding to court filings and motions, navigating discovery, and putting on a trial." Id. at 490-491. The court "must consider the plaintiff's literacy, communication skills, education level, litigation experience, intellectual capacity, psychological history, physical limitations and any other characteristics that may limit the plaintiff's ability to litigate the case." Id. at 491. In situations where the plaintiff files his motion in the early stages of the case, the court may determine that it is "impossible to tell whether [the plaintiff] could represent himself adequately." Pickett, 930 F.3d at 871.

The plaintiff has shown that he made a reasonable attempt to find a lawyer on his own, so he has satisfied the first prong. But this case is at a very early stage, and the court usually does not recruit counsel this early in a case. The court understands that the plaintiff says that he has mental health issues and that he doesn't understand what is going on in this case. Despite this, the plaintiff's filings are clear and show that he can advocate for himself, including describing the events that give rise to his claim. The court has allowed the

plaintiff to proceed against one defendant on a claim that is not complex. Along with this order, the court will include a guide prepared by court staff to address common questions that arise in cases filed by prisoners. Entitled “Answers to Prisoner Litigants’ Common Questions,” this guide contains information that the plaintiff may find useful in prosecuting his case. After the defendant answers the complaint, the court will issue a scheduling order which will include information about the discovery process and filing motions for summary judgment. The court will deny the plaintiff’s motion to appoint counsel without prejudice. This means that if, as the case progresses, the plaintiff still believes he cannot proceed on his own, he may renew his request for counsel.

## III. Conclusion

The court **GRANTS** the plaintiff’s motion for leave to proceed without prepaying the filing fee. Dkt. No. 2.

The court **DENIES WITHOUT PREJUDICE** the plaintiff’s motion to appoint counsel. Dkt. No. 7.

The court **DISMISSES** defendant Dodge Correctional Institution.

Under an informal service agreement between the Wisconsin Department of Justice and this court, the court will electronically transmit a copy of the complaint and this order to the Wisconsin Department of Justice for service on defendant Emma Fritsch. Under the informal service agreement, the court **ORDERS** defendant Fritsch to file a responsive pleading to the complaint within sixty (60) days.

The court **ORDERS** that the parties must not begin discovery until after the court enters a scheduling order setting deadlines for completing discovery and filing dispositive motions.

The court **ORDERS** that plaintiffs who are incarcerated at Prisoner E-Filing Program institutions must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court. Plaintiffs who are incarcerated at all other prison facilities, and plaintiff's who are not incarcerated, must submit the original document for each filing to the court to the following address:

Office of the Clerk
United States District Court
Eastern District of Wisconsin
362 United States Courthouse
517 E. Wisconsin Avenue
Milwaukee, Wisconsin 53202

DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the case.

The court advises the plaintiff that if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss the case based on his failure to diligently pursue it. The parties must notify the Clerk of Court of any change of address. The court advises the plaintiff that it is his responsibility to promptly notify the court if he is released from custody or transferred to a different institution. The plaintiff's failure to keep the court advised of his address may result in the court dismissing this case without further notice.

Dated in Milwaukee, Wisconsin, this 3rd day of September, 2026.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**